**KARDON et al. v. NATIONAL GYPSUM CO. et al.**

Civ. A. No. 6203.

District Court, E. D. Pennsylvania.

Dec. 2, 1946.

Henry Arronson, of Philadelphia, Pa., for plaintiff.

R. T. McCracken and E. H. Cushman, both of Philadelphia, Pa., for defendant.

Roger S. Foster, of Philadelphia, Pa., for Securities and Exchange Commission.

KIRKPATRICK, District Judge.

This complaint, in substance, charges a conspiracy, participated in by the three defendants, and certain fraudulent misrepresentations and suppressions of the truth in pursuance of the conspiracy, as a result of which the plaintiffs were induced to sell their stock in two corporations to the Slavins, two of the defendants, for far less than its true value.

None of the three defendants have been served with process in this district. The Slavins were served in the Western District of Michigan; and National, although, being a registered foreign corporation in Pennsylvania it could have been served here, was served at its main office in the Western District of New York. The Slavins have moved to dismiss on the ground that the service upon them was invalid and that the Court has not obtained jurisdiction over their persons. National has moved to dismiss (1) on the same ground

and (2) on the ground that the complaint fails to state a valid cause of action against them. National also asserts that, even if served in Pennsylvania, the action could not proceed against it because the Slavins, indispensable parties, have not been and cannot be brought into court.

This Court has jurisdiction over the individual defendants only if the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq., is applicable. Sec. 27 of that Act authorizes extraterritorial service of process in suits "to enforce any liability or duty created by this title or rules and regulations thereunder, or to enjoin any violation of such title or rules and regulations."

Assuming, but not deciding, that the words "to enjoin any violation of such title or rules and regulations" mean enforcement proceedings under Sec. 21 and do not refer to suits by individuals, the main question is whether the defendants' conduct, stated in the complaint as a basis of the plaintiffs' cause of action, gives rise to a liability or involves a breach of duty, created by the Act.

It is not, and cannot be, questioned that the complaint sets forth conduct on the part of the Slavins directly in violation of the provisions of Sec. 10(b) of the Act and of Rule X–10B–5 which implements it. It is also true that there is no provision in Sec. 10 or elsewhere expressly allowing civil suits by persons injured as a result of violation of Sec. 10 or of the Rule. However, "The violation of a legislative enactment by doing a prohibited act, or by failing to do a required act, makes the actor liable for an invasion of an interest of another if; (a) the intent of the enactment is exclusively or in part to protect an interest of the other as an individual; and (b) the interest invaded is one which the enactment is intended to protect. * * *" Restatement, Torts, Vol. 2, Sec. 286. This rule is more than merely a canon of statutory interpretation. The disregard of the command of a statute is a wrongful act and a tort. As was said in Texas & Pacific R. Co. v. Rigsby, 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874, "This is but an application of the maxim, Ubi jus ibi remedium."

■ ■ Of course, the legislature may withhold from parties injured the right to recover damages arising by reason of violation of a statute but the right is so fundamental and so deeply ingrained in the law that where it is not expressly denied the intention to withhold it should appear very clearly and plainly. The defendants argue that such intention can be deduced from the fact that three other sections of the statute (Sections 9, 16 and 18) each declaring certain types of conduct illegal, all expressly provide for a civil action by a person injured and for incidents and limitations of it, whereas Sec. 10 does not. The argument is not without force. Were the whole question one of statutory interpretation it might be convincing, but the question is only partly such. It is whether an intention can be implied to deny a remedy and to wipe out a liability which, normally, by virtue of basic principles of tort law accompanies the doing of the prohibited act. Where, as here, the whole statute discloses a broad purpose to regulate securities transactions of all kinds and, as a part of such regulation, the specific section in question provides for the elimination of all manipulative or deceptive methods in such transactions, the construction contended for by the defendants may not be adopted. In other words, in view of the general purpose of the Act, the mere omission of an express provision for civil liability is not sufficient to negative what the general law implies.

The other point presented by the defendants is that, under the general rule of law, civil liability for violation of a statute accrues only to a member of a class (investors) for whose special benefit the statute was enacted—an argument applied to both Sec. 10 and to Rule X–10B–5. Sec. 10 prohibits deceptive devices "in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." I cannot agree, however, that "investors" is limited to persons who are about to invest in a security or that two men who have acquired ownership of the stock of a corporation are not investors merely because they own half of the total issue.

■ Apart from Sec. 10(b), I think that the action can also be grounded upon Sec. 29(b) of the Act which provides that contracts in violation of any provision of the Act shall be void. Here, unlike the point just discussed, the question is purely one of statutory construction. It seems to me that a statutory enactment that a contract of a certain kind shall be void almost necessarily implies a remedy in respect of it. The statute would be of little value unless a party to the contract could apply to the Courts to relieve himself of obligations under it or to escape its consequences. Beyond this, however, as pointed out by Judge Coxe in Geismar v. Bond & Goodwin, Inc., D.C., 40 F.Supp. 876, 878, the 1938 amendment which deals in part with actions "maintained in reliance upon this subsection" clearly contemplates that Congress meant the original statute to be interpreted as providing for civil suits under it. And, as he further pointed out, such suits would include not only actions for rescission but also for money damages.

■ ■ National's contention that the complaint fails to state a cause of action against it cannot be sustained. Parenthetically, as a practical matter, it does not make much difference on this point whether the complaint states a cause of action under the Act or under the common law because there is diversity of citizenship and National can be served with process in this district at any time. However, I think that the complaint can be sustained both ways. It alleges (1) a conspiracy between the Slavins to defraud the plaintiffs, by making, among other things, untrue statements of material facts, (2) acts by the Slavins in pursuance of the conspiracy consisting, among other things, of falsely representing to the plaintiffs that no negotiations were pending for the sale of the assets of the corporation (Par. 13), (3) an agreement with National during the pendency of the conspiracy and prior to its consummation to sell the assets of the company to National (Par. 15) and (4) that, during the pendency of the conspiracy and prior to its consummation, "The Slavins and National * * * conspired * * * by engaging in acts * * * which operated and were intended to operate as a

fraud and deceit upon the plaintiffs * * * and * * * National, did, * * * by devices and other means and instrumentalities" induce the Kardons to part with their stock (Par. 21). Undoubtedly these allegations are vague and wholly lacking in the definitions required by Federal Rules of Civil Procedure, Rule 9, 28 U.S.C.A. following section 723c, in all averments of fraud. But they do allege more than mere nondisclosure on the part of National and I cannot say that they do not state a cause of action. Assuming that merely failing to disclose the negotiations would have been insufficient, if a motion for further particulars is made I would require the plaintiffs to state specifically as to National what, if anything, National did more than fail "to disclose to the plaintiffs its identity, the terms of the negotiations that Slavins had with it," and whether the plaintiffs intend to aver that National had knowledge of and authorized or agreed to the Slavins' intention to keep its part secret or to represent falsely to the plaintiffs that there were no negotiations pending.

The motions are denied.